**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GREGORY J. BARGER. | Criminal Action No. 24-94 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Gregory J. Barger's ("Defendant") Motion to Suppress all evidence obtained through law enforcement's search of his black Samsung phone. (ECF No. 34.) The United States of America (the "Government") opposed (ECF No. 36), and Defendant replied (ECF No. 44). The Court subsequently held an evidentiary hearing on July 1, 2026. (ECF No. 59.) Following the hearing, Defendant filed a supplemental brief (ECF No. 60), and the Government filed a supplemental brief in response (ECF No. 61). The Court has carefully considered the parties' submissions, and for the reasons stated below, denies Defendant's Motion.

## I. BACKGROUND

### A. Defendant's alleged underlying conduct

On April 6 and 7, 2022, the Mercer County Prosecutor's Office (the "MCPO") conducted an undercover internet operation to locate individuals attempting to solicit minors for sex. (App. to Mot. to Suppress ("App.") A40-A42, ECF No. 34-1; Hr'g Tr. 60:1-62:12, ECF No. 59.) During the investigation, on April 7, 2022, Defendant engaged in a text conversation with Detective Charles Antinoro ("Antinoro") of the MCPO, who was acting in an undercover capacity posing as a fourteen-year-old girl using username UCE11 ("UCE11") over the anonymous online social network, Whisper. (App. A2; Hr'g Tr. 60:11-20, 107:17-21, 109:21-23.) During the conversation,

Defendant, using the username "Bright_Hockey", asked UCE11 how old she was, to which UCE11 responded "14." (App. A2.) Defendant invited UCE11 for a "movie and beer at [his] place," and requested a photograph of UCE11 holding up a piece of paper with that day's date on it. (*Id.*) UCE11 sent the requested picture, which was taken of another detective also acting in an undercover capacity. (*Id.*) Defendant told UCE11 that he was hoping to have some "other fun" if UCE11 wanted. (*Id.*) When asked what that meant, Defendant said the "sexual kind." (*Id.*) Defendant stated "[y]ou understand this is kinda [*sic*] dangerous because of your age? we gotta [*sic*] be careful." (*Id.*) Defendant then wrote that they could take "turns going down on each other," and that "it's easy, Ill [*sic*] teach you." (*Id.*) Defendant planned to meet UCE11 at the Hamilton Train Station, in Hamilton Township, New Jersey. (*Id.*) UCE11 requested a photo of Defendant to identify him, and Defendant sent a photograph of himself from approximately his mouth to his waist, showing his long brown and grey beard. (*Id.*) At the arranged meeting time, Defendant messaged UCE11 to "go stand by the ATM outside and I'll turn my headlights on." (*Id.* at A3.) Defendant, whose vehicle was parked directly in front of the ATM machine at the train station, was arrested following a motor vehicle stop. (*Id.*) During a search incident to arrest, the officers seized Defendant's cellphone. (*Id.*)

### B. The Search Warrant and Certification in Support of the Search Warrant

The next day, April 8, 2022, law enforcement officers of the MCPO applied for a search warrant to search the contents of Defendant's cellphone. (*See id.* at A26-35.) MCPO Detective Shari Johnson ("Johnson") signed a certification in support of the search warrant (the "Certification"), setting forth the facts above and additional details of the investigation and her background. (*Id.*)

That same day, a judge on the Superior Court of New Jersey for Mercer County signed a warrant (the "Warrant") granting the MCPO and other assisting state and federal law enforcement agencies the authority to:

> physically search and forensically examine [Defendant's phone] in order to obtain evidence of the crimes of Attempted Endangering the Welfare of a Child, in violation of N.J.S.A. 2C:5-1, 2C:24-4, et. seq.[;] Attempted Luring a Child, in violation of N.J.S.A. 2C:5-1a[,] 2C:13-6, et. seq.[;] Attempted Aggravated Sexual Assault, in violation of N.J.S.A. 2C:5-1[,] 2C:14-2[;] as well as Attempted Kidnapping, in violation of N.J.S.A. 2C:5-1; 2C:13-1, et. seq., and you shall take into your possession all such evidence so that same may be dealt with according to law.

(*Id.* at A24-25.)

The Certification was expressly incorporated into the Warrant (*id.* at A25), and broadly states that it was intended to cover, among other things:

> photographs, videos, emails[,] . . . SMS messages, . . . contact lists [and] . . . telephone numbers, . . . all application data, including . . . call data or messaging data [and] content . . . electronic chat substance and history, and/or any other forms of electronic communication and/or electronic data [or] information contained therein *that may be associated with or connected to the aforementioned crimes being investigated.*

(*Id.* at A34 ¶ 11 (emphasis added)).

### *1. The Extraction of Data from Defendant's Cellphone*

On April 19, 2022, MCPO Detective Thomas Mladenetz ("Mladenetz") dropped Defendant's cellphone off at the New Jersey State Police Regional Computer Forensics Lab (the "RCFL") with a request that an extraction be performed on the device. (Hr'g Tr. 18:18-20:25, 25:13-15.) On July 17, 2022, Mladenetz received a call from RCFL notifying him that it needed a hard drive to fit the data from Defendant's cell phone. (*Id.* at 28:24-29:2.) Mladenetz thereafter delivered the requested hard drive. (*Id.* at 29:3-5.) Forensic Examiner Rocco Guerriero ("Guerriero") performed an examination of Defendant's phone. (Gov. Ex. 1 to Opp'n Br. G1, ECF

No. 66.)[1] Guerriero processed the extracted data into a human readable format, Cellebrite Reader Portable Case Report (the "Extraction"). (*Id.* at G2.) On August 1, 2022, Guerriero called Mladenetz to inform him that the Extraction was complete and ready for pickup. (Hr'g Tr. 29:6-9.)

Mladenetz retrieved Defendant's cellphone and the Extraction from the RCFL on August 24, 2022. (Gov. Ex. 2 to Opp'n Br. G6; Hr'g Tr. 21:18-22:2, 25:16-20.) That same day, Mladenetz turned Defendant's cellphone and the Extraction back over to Antinoro. (Hr'g Tr. 22:9-13, 63:18-23, 122:7-17.) The next day, on August 25, 2022, Antinoro was informed that corrections officers at the Mercer County Jail (the "MCJ") intercepted an envelope that was mailed to Defendant that contained possible child pornography. (*Id.* at 136:10-16; App. A9, A41.) Antinoro thereafter received the envelope which was addressed from Minor Victim-1 ("MV1") in the United Kingdom to Defendant and contained a three-page letter and nine photographs (collectively, the "Jail Documents"). (App. A9, A41; Hr'g Tr. 65:6-66:1.) The photographs depicted a female, MV1, believed to be under the age of eighteen. (App. A9, A41; Hr'g Tr. 130:10-19, 132:22-25.) The letter and notations on the back of the photographs included descriptions of sexual contact between MV1 and Defendant. (Gov. Ex. 3 to Opp'n Br. G11-G26.)

### 2. *Antinoro's Search of Defendant's Cellphone*

At the evidentiary hearing, Antinoro testified about how he conducted his search of Defendant's cellphone. (*See generally id.*) Antinoro explained that he did not recall if he began reviewing the Extraction on August 24, 2022, or August 25, 2022. (*Id.* at 64:6-17.) Antinoro further testified that he did not remember the specific order in which he executed the search of the

[1] The Court notes that the Government hand delivered three exhibits in opposition to Defendant's Motion to Suppress that were never filed on the docket. The Court hereby directs the Clerk to file those exhibits under seal.

Extraction. (*Id.* at 77:12-14.) Antinoro, however, reviewed the Extraction using a Cellebrite software called Cellebrite Reader. (*Id.* at 72:16-23.) Antinoro further agreed that he conducted a search of the Extraction after receiving the Jail Documents and forming an opinion about MV1's age. (*Id.* at 138:1-8.)

In describing how he conducted the search, Antinoro explained that he initially searched "messages, . . . photographs, videos, and any attachments sent through any kind of messengers." (*Id.* at 77:18-23.) After "a brief search through . . . the photographs that [he] found," Antinoro found images that he believed to be child sexual abuse material ("CSAM"). (*Id.* at 78:2-11.) Antinoro testified that when opening the Extraction, on the left-hand side of the screen there is a tab called the "analyzed data tab" which "gives . . . all the data organized in its respective locations." (*Id.* at 86:24-87:7.) After clicking on the analyzed data tab, a new column populates toward the left of the screen, which separates the analyzed data into "calls, contacts, devices, locations, messages, search web, and different applications that are on the cell phone." (*Id.* at 87:15-23.) Antinoro explained that he "went to messages and media" while conducting his search of the Extraction. (*Id.* at 88:3-6.) Antinoro testified that he "[j]ust scroll[ed] through [the images], and [that] in this particular case, [the] nudity [classification] stuck out to [him]." (*Id.* at 89:18-21.) Antinoro testified that when he clicked on the nudity category, he observed three images of CSAM involving MV1. (*Id.* at 89:25-91:11, 164:3-11.) He then explained that he "[c]ontinue[d] to scroll" through the images until he identified another image of interest. (*See id.* at 92:15-24.)

Antinoro also testified that he reviewed the "messages" classification and specifically reviewed WhatsApp messages between Defendant and MV1. (*Id.* at 93:11-94:10.) He explained that he found messages between Defendant and MV1 "[t]hrough keyword searches" of "15 YO, meaning years old[,]" 16 YO[,] and "[h]appy birthday." (*Id.* at 94:21-95:3.) In addition to the

WhatsApp messages, Antinoro reviewed data in the Whisper application where he found "[t]he communications between [himself in his undercover capacity] and [Defendant]." (*Id.* at 95:10-18.) Antinoro testified that, although he began his review of the Extraction in August 2022, he did not complete his investigative report until January 25, 2023. (*Id.* at 95:21-96:25.) Antinoro explained that he reviewed the Extraction on more than one day, and while he did not recall the exact number of times that he reviewed it, he explained that it was "[m]aybe a couple times a week at most." (*Id.* at 97:8-13.)[2]

### C. Procedural Background

On July 6, 2022, Defendant was charged and indicted with three of the offenses listed in the search warrant in New Jersey Superior Court, Mercer County, related to his alleged conduct on April 6 and 7, 2022. (App. A36-A39.) Those charges remain pending. (*See generally* Superior Court of New Jersey, Mercer County, Criminal Case No. 22001099.)

On February 21, 2023, Defendant was charged federally by Criminal Complaint with one count of Sexual Exploitation of a Child, Production of Child Pornography, in violation of 18 U.S.C. § 2251. (*See generally* Compl., ECF No. 1.) On February 15, 2024, a Grand Jury returned a two-count Indictment against Defendant charging him with one count of Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a), (e) ("Count One") and one count of Coercion and Enticement, Online Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) ("Count Two"). (*See generally* Indictment, ECF No. 18.) Defendant was arraigned and pleaded not guilty to the charges on February 28, 2024. (Arraignment Min. Entry, ECF No. 21.)

---

[2] Additionally, Special Agent Kimberlee Gautier ("Gautier"), subsequently reviewed the Extraction and located, among other things, location data that showed Defendant's previous travel to the United Kingdom, twenty-four images, and four videos of CSAM. (App. A12, A17, A19; Hr'g Tr. 167:13-169:22.)

Defendant subsequently filed the instant Motion to Suppress. (Def.'s Mot. to Suppress, ECF No. 34.) The Government opposed (Gov't's Opp'n Br., ECF No. 36), and Defendant replied (Def.'s Reply Br., ECF No. 44). The Court thereafter held an evidentiary hearing on July 1, 2026. (*See generally* Hr'g Tr.) Following the hearing, Defendant filed a supplemental brief (Def.'s Supp. Br., ECF No. 60), and the Government filed a supplemental brief in response (Gov't's Supp. Br., ECF No. 61).

## II. LEGAL STANDARD

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quotation marks and citations omitted). The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* (quotation marks and citation omitted). The particularity requirement is satisfied when "the description is such that the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). It is well established that "[i]f the scope of the search exceeds that permitted by the terms

of a validly issued warrant [. . .] the subsequent seizure is unconstitutional without more." *Durham v. City & County of Erie*, No. 04-297, 2007 WL 838977, at *5 (W.D. Pa. Mar. 15, 2007) (alterations in original) (quoting *Horton v. California*, 496 U.S. 128, 140 (1990)), *aff'd sub nom.*, *Durham v. McElynn*, 254 F. App'x 892 (3d Cir. 2007). "Whether evidence is within a search 'scope requires not a "hypertechnical" analysis, but a "common-sense, and realistic" one.'" *United States v. Smith*, No. 23-8, 2024 WL 150128, at *4 (W.D. Pa. Jan. 12, 2024) (quoting *United States v. Okorie*, 425 F. App'x 166, 169 n.1 (3d Cir. 2011)).

## III. DISCUSSION

Defendant argues that the evidence obtained through searches of his cellphone must be suppressed because: (1) Antinoro's searches of the phone exceeded the scope authorized by the Warrant[3]; (2) the Warrant itself was deficient because it lacked sufficient particularity and was therefore a general warrant; (3) the Warrant was overbroad because it authorized the seizure of evidence that had no relevance to the investigation into the enumerated state crimes; and (4) the plain view exception should not apply because in the context of electronically stored information it threatens to turn every warrant into a general warrant, and the evidence was not in plain view. (*See generally* Def.'s Mot. to Suppress; Def.'s Reply Br.; Def.'s Supp. Br.) For the reasons discussed below, the Court finds that Antinoro's search did not exceed the scope of the validly-issued Warrant.

[3] Defendant initially moved to suppress all evidence obtained through searches of his black Samsung phone conducted *after August 25, 2022*, because those searches exceeded the scope of the Warrant, (Def.'s Mot. to Suppress 1), but following the evidentiary hearing argues that "the evidence illegally obtained during the search of [Defendant's] cellphone must be suppressed" (Def.'s Supp. Br 14).

### A. The Warrant was Particular and not a General Warrant

Defendant argues that the warrant was a "general warrant" because it failed to limit its scope to the relevant time period of the investigation, or the relevant locations on the phone where pertinent information would likely be found. (Def.'s Moving Br. 6, 15-17; Def.'s Reply Br. 6-11.) Defendant also argues that there was no likelihood the phone would contain any photos that were evidence of the crimes enumerated in the Certification. (Def.'s Moving Br. 17.)

"A general warrant is one that is insufficiently particularized in either the places to be searched or the persons or things to be seized." *United States v. Fallon*, 61 F.4th 95, 107 (3d Cir. 2023). The term "general warrant" "refers to a specific form of authorization abhorred by the founders, which authorized 'a general, exploratory rummaging in a person's belongings.'" *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), *holding modified by Horton v. California*, 496 U.S. 128 (1990)). The particularity requirement was therefore included in the Fourth Amendment to prohibit these types of general warrants. *Id.* "Whether a warrant is sufficiently particularized depends on the nexus between the evidence to be sought or seized and the alleged offenses." *Id.* A warrant, however, "is not unconstitutionally general unless it can be said to vest the executing officer with unbridled discretion to conduct an exploratory rummaging in search of criminal evidence." *United States v. Karrer*, 460 F. App'x 157, 161 (3d Cir. 2012) (citation modified) (quoting *United States v. Leveto*, 540 F. 3d 200, 211 (3d Cir. 2008)). Moreover, the Third Circuit has held that the absence of such a temporal limit does not make a warrant a general one. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 151 (3d Cir. 2002) ("At most, the lack of time restrictions meant that the warrant was overly broad, not general.").

The Court finds that the Warrant here was properly limited in scope by the enumerated offenses and focused on Defendant's phone, which sufficiently limited law enforcement's discretion. *See Karrer*, 460 F. App'x at 161-62 (holding that law enforcement's discretion was adequately limited where the warrant referenced searching for evidence of an enumerated section of the Pennsylvania Criminal Code). The Warrant specifically identified the place to be searched—Defendant's phone—and the evidence to be seized—evidence of the enumerated crimes already discussed. (App. A24-25.) These two limiting factors did not vest law enforcement with "'unbridled discretion' to search for and seize whatever they wished" and the Warrant was therefore "not 'general.'" *Ninety-Two Thousand*, 307 F.3d at 149. The photographs exchanged between Defendant and UCE11 provided law enforcement with an objectively reasonable belief that evidence of those photographs would be present on Defendant's phone in the areas storing images, videos, and messages. (*See* App. A2, A26-35.) What is more, the Warrant authorized Antinoro to search the areas of the Extraction likely to contain evidence of the specified offenses—specifically, the messages, photographs, and attachments sent through any kind of messengers. (*See* App. A24-36.) The Third Circuit, moreover, has noted that "there may be no practical substit[ution] for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders" while conducting an electronic search, *United States v. Stabile*, 633 F.3d 219, 239 (3d Cir. 2011) (quoting *United States v. Burgess*, 576 F.3d 1078, 1094 (10th Cir. 2009)), and that "because criminals can—and often do hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of [an electronic device] may be required[,]" *id.* at 237.

The Warrant, accordingly, was sufficiently particularized and was not a general warrant.

**B. The Warrant was not Overbroad**

Defendant also argues that the Warrant was overbroad because it authorized the seizure of evidence that had no relevance to the investigation into the enumerated state crimes, and that the total lack of temporal limitation in the Warrant can be understood as authorizing an overbroad search across the majority of the phone's data in the absence of probable cause. (Def.'s Moving Br. 6, 17-18; Def.'s Reply Br. 11-13.) Defendant contends that only the last two days of phone data, and the data contained in specific locations like the Whisper application, could possibly be relevant to the crimes for which law enforcement sought evidence. (Def.'s Moving Br. 18.)

A warrant is overbroad when it "authorizes the seizure of items as to which there is no probable cause." *Karrer*, 460 F. App'x at 162 (quoting *Ninety-Two Thousand*, 307 F.3d at 149). "Probable cause exists where the totality of the circumstances suggests 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, there was probable cause to search Defendant's phone for evidence of the enumerated state crimes based on the sting operation and communications related to the sting operation. (*See* App. A24-35.) The Warrant, moreover, was not overbroad simply because it authorized law enforcement to search nearly the entire contents of Defendant's phone which was "likely to include materials unrelated to any" of the enumerated offenses. *Karrer*, 460 F. App'x at 162. As discussed above, the Third Circuit has explained that, as "a practical matter, when a search requires review of a large collection of items, it is certain that some innocuous items will be examined, at least cursorily, in order to determine whether they are, in fact, among those items authorized to be seized." *Id.* (citation modified) (quoting *Stabile*, 633 F.3d at 234). Given the nature of electronic data, "it would be impossible to identify *ex ante* the precise files, file types, programs and devices

that would house the suspected evidence." *Id.* The Certification presented the issuing judge with an adequate basis to believe that evidence of the enumerated crimes would be found on Defendant's phone. (App. A26-35.) As to the temporal limitation, the photo Defendant sent to UCE11 could have been taken at any time in the past, well outside of the two-day window Defendant argues the warrant should have been limited to. For the same reasons discussed above regarding general warrants, the search of areas other than the specific application involved in the offense (here, Whisper) was "objectively reasonable" because criminals can and do take steps to conceal evidence of crimes on their electronic devices. *Stabile*, 633 F.3d at 239. And here, moreover, Defendant sent and received photographs connected with the sting operation, so it was objectively reasonable for law enforcement to search those portions of Defendant's phone which may have included evidence of those photographs or the photographs themselves—which is precisely what Antinoro did. (*See* App. A2.)

### C. Antinoro's Search Did Not Exceed the Scope of the Warrant

Having found that the Warrant was validly issued because it was not general or overbroad, the Court now turns to whether law enforcement's search of the phone exceeded the scope of the Warrant. The Court notes that it has had the opportunity to evaluate Antinoro's live testimony and make credibility determinations based on that testimony. Here, as discussed, the Extraction was completed pursuant to a valid search Warrant to search for evidence of the crimes of attempted endangering the welfare of a child, attempted luring of a child, attempted aggravated sexual assault, and attempted kidnapping. (App. A24-25.) The Warrant also incorporated by reference the Certification which specifically set forth the types of evidence sought, including photographs, videos, call records, messaging content and data, and location information that may be associated with or connected to the crimes being investigated. (*Id.* at A25-35.) During the sting operation,

Antinoro sent Defendant a picture of another undercover officer posing as a minor, and Defendant sent a picture of himself to Antinoro. (*Id.* at A2; Hr'g Tr. 60:11-20, 109:24-110:4.) The Warrant, accordingly, permitted Antinoro to search those areas of Defendant's phone where such photographs would be located. (*See* App. A24-25.)

As discussed above, the Warrant authorized Antinoro to search for evidence that Defendant had attempted to endanger, lure, or sexually assault UCE11. (App. A24-35.) The fact that during the search he found evidence of child pornography—was, at the very least, evidence that was "associated with or connected to" the crimes of attempting to endanger the welfare of, attempting to lure, and/or attempting to sexually assault another victim. (*See* App. A34 ¶ 11.) Antinoro's use of the "nudity" media classification, and search terms were additionally, at the very least, used to search for evidence that was possibly associated with or connected to, if not actual evidence of those same crimes. (*See id.* A24-25, A34 ¶ 11.)

Furthermore, the fact that Antinoro was aware of the Jail Documents at or near the time he commenced the search of the Extraction data does not render the extraction search outside the scope of the Warrant (*See id.*; Hr'g Tr., 138:1-8.) The Third Circuit has explained that when a warrant authorizes law enforcement to search for evidence of an enumerated offense, it necessarily extends to evidence "relevant to any prosecution of the designated offense[s]." *United States v. Lackner*, 535 F. App'x 175, 179 (3d Cir. 2013) (quoting *United States v. Williams*, 592 F.3d 511, 520 (4th Cir. 2010)). Searching for evidence of such crimes was, accordingly, squarely within the scope of the Warrant. (*See* App. A24-25.) "The fact that the evidence found on [Defendant's phone] depicted a second potential minor [therefore] does not invalidate the search or seizure." *Lackner*, 535 F. App'x at 179.

The cases Defendant relies on to support the proposition that such evidence depicting a second potential victim does invalidate the search are distinguishable. In *United States v. Lofstead*, the government conceded that there were portions of the warrant that were likely overbroad and that there was no probable cause to search the defendant's phone for evidence of child pornography based on a warrant that authorized law enforcement to search for evidence that defendant attempted to solicit sex from a minor. 574 F. Supp. 3d 831, 836-41 (D. Nev. 2021). Here, however, Antinoro had evidence that an objectively reasonable officer would have believed indicated that Defendant had attempted to endanger, lure, or sexually assault UCE11—all of which are crimes specifically enumerated in the Warrant. (*See* App. A9-10, A24-25, A40-42.) The fact that Antinoro found evidence regarding MV1 (an additional minor victim) during the search does not invalidate the search. *Lackner*, 535 F. App'x at 179. In *Virgin Islands v. John*, moreover, the search of a teacher's home pursuant to a warrant that purported to authorize the seizure of all pornographic materials featuring minors from his home, was found to be invalid because the only evidence against the teacher was evidence of sexual assault. 654 F.3d 412, 414, 419-20 (3d Cir. 2011). The Third Circuit held that the search exceeded the scope of the warrant because there was no inferential connection between the teacher's abuse and likely possession of pornography. *Id.* Here, conversely, a direct connection exists between the crimes enumerated in the Warrant and those same crimes against UCE11 and MV1. (*See e.g.*, App. A9-10, A24-25, A40-42.)

Furthermore, the fact that Antinoro knew of MV1 prior to his review of the Extraction does not mean that he exceeded the scope of the Warrant because law enforcement's subjective knowledge is not relevant to whether a search falls within the scope of a warrant. *See Stabile*, 633 F.3d at 240 (3d Cir. 2011) (explaining that a detective's knowledge "that there *may* have been child pornography" in a folder on a defendant's hard drive did not mean the detective exceeded the scope

of the search warrant because "an investigator's subjective intent is not relevant to whether a search falls within the scope of a search warrant").

The Court, accordingly, finds that Antinoro's search of Defendant's cellphone did not exceed the scope of the Warrant.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Suppress is denied. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: AUGUST 31, 2026